

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-115-CR

EX PARTE

JAVIER GUTIERREZ

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Javier Gutierrez appeals from the trial court's order denying

relief on his application for writ of habeas corpus filed pursuant to article 11.09

of the Texas Code of Criminal Procedure.[2]  We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] We rely on Gutierrez's Application for Writ of Habeas Corpus, along with the record from the hearing on that application, because we did not request appellate briefing.  *See* TEX. R. APP. P. 31.1.

## II. PROCEDURAL BACKGROUND

Gutierrez was indicted for the offense of driving while intoxicated in Denton County on December 12, 1992. The record contains three agreed motions for continuance. In the first motion for continuance dated March 2, 1993, the parties agreed that the arraignment should be continued until March 29, 1993. That motion contains a handwritten notation stating, "[T]enemos translator en ese dia," which roughly translates, "[W]e have a translator that day." On March 29, 1993, the parties agreed to a continuance until April 13, 1993, and the motion for continuance states that there was a plea based upon an agreed punishment recommendation from the State. On April 13, 1993, the parties agreed to a third continuance, postponing further proceedings until June 7, 1993.

On June 7, 1993—the date that Gutierrez's case was ultimately called to trial—an interpreter, whom the county paid for, rendered thirty minutes of service to assist Gutierrez with the proceedings. On that same date, Gutierrez, acting pro se, signed waivers—waiving his right to be represented by counsel and his right to a jury trial—and admonishments. Gutierrez thereafter pleaded no contest to the offense of misdemeanor driving while intoxicated on December 12, 1992, and the trial court sentenced him to 120 days' confinement in the county jail, probated for twenty-four months; suspended his

license for 365 days; and assessed a $100 fine and $90 in court costs. Gutierrez did not appeal this conviction.

On February 25, 2008, Gutierrez filed an application for writ of habeas corpus, arguing that he is currently facing a felony indictment in Tarrant County because his 1993 misdemeanor DWI conviction is being used as an enhancement and that but for the use of the 1993 misdemeanor conviction as an enhancement, the current charge would be a misdemeanor. Specifically, Gutierrez argued that his 1993 conviction is void because his plea was unlawfully induced or involuntarily made and because his waiver of counsel was unknowingly or unintelligently made and was therefore invalid.

Gutierrez stated in an affidavit attached to his application that he was born in Mexico and went to public school in Mexico. He explained that at the time of his 1993 plea hearing, he did not understand English very well because Spanish was spoken at his house and at his job. He stated that he did not know what he was signing and only signed the documents because he was told that he would not go to jail. He said that the interpreter that Denton County provided on his court date confused him even more because the interpreter's Spanish was not very good. Gutierrez stated that if he had understood that he was entitled to a lawyer and a jury trial, he would have chosen both.

3

Also attached to Gutierrez's application is an affidavit from Jacob Jacoby, who was the assistant criminal district attorney who prosecuted Gutierrez's 1992 DWI. In the affidavit, Jacoby did not indicate that he specifically recalled Gutierrez's case but said that generally the county court would call pro se defendants to the bench, inquire of their employment status, and determine whether they were going to hire counsel, seek an appointed attorney, or represent themselves pro se. The county court would indicate that if the defendants did not want to hire an attorney, they could speak to the State's attorney.

Jacoby said that he did not have a formalized strategy for dealing with pro se defendants and that when he first met pro se defendants, he would tell them that he represented the State and that they did not have to talk to him. Jacoby told them that he could not give advice. Jacoby went through the *Miranda* warnings, but he did not explain them.

Afterwards, the county court would tell pro se defendants that they could still hire an attorney or have the court appoint one if they could not afford to hire an attorney. Jacoby stated that the county court told the pro se defendants that the court would hold them to the same standard as a licensed attorney, but the court did not admonish the pro se defendants on the dangers of self-representation.

4

Jacoby explained that they had an informal manner of obtaining and appointing interpreters and that Jonathan Fairbanks, a college student who was neither licensed nor certified, was appointed in this case.

In response, the State attached an affidavit from the Honorable Don Windle, who was the judge in County Court at Law No. 3 at the time of Gutierrez's plea.[3] In his affidavit, Judge Windle explained that he did not specifically recall Gutierrez's case but that his common practice for conducting criminal pleas included having them conducted on the record, informing the defendant of his *Miranda* rights and advising the defendant strongly against self-representation, and ensuring that an interpreter assisted the defendant if he did not speak English well.

After hearing the remarks of counsel and reviewing the file, including Gutierrez's application for writ of habeas corpus and the State's response, the trial court signed an order denying the requested relief. Gutierrez now appeals from the denial of the relief he requested in his post-conviction writ.

### III. STANDARD OF REVIEW

A defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or

---

[3] Judge Windle currently presides over the Denton County Probate Court.

5

restrained as a result of a misdemeanor charge or conviction, or (2) is no longer confined but is subject to collateral legal consequences resulting from the conviction. *See* TEX. CONST. art. V, § 8; TEX. CODE CRIM. PROC. ANN. arts. 11.09, 11.21, 11.22 (Vernon 2006); *State v. Collazo*, No. 01-06-01076-CR, 2007 WL 3227611, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 1, 2007, pet. stricken). An applicant for a writ of habeas corpus bears the burden of proving his allegations by a preponderance of the evidence. *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995), *cert. denied*, 518 U.S. 1021 (1996).

We generally review a trial court's ruling on a writ application for an abuse of discretion. *See Ex parte Mann*, 34 S.W.3d 716, 718 (Tex. App.—Fort Worth 2000, no pet.); *see also Ex parte Peralta*, 87 S.W.3d 642, 645 (Tex. App.—San Antonio 2002, no pet.). However, an abuse of discretion review of a trial court's decision is not necessarily appropriate in the context of application of law to facts when the decision does not turn on the credibility or demeanor of witnesses. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *Ex parte Peralta*, 87 S.W.3d at 645. Instead, an appellate court must conduct a de novo review when "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). In this case, because no testimony was taken at the habeas hearing and because the trial judge who

6

heard the habeas application did not preside at trial, we conduct a de novo review. *See Ex parte Peralta*, 87 S.W.3d at 645.

## IV. GUTIERREZ'S ARGUMENTS

In his application for writ of habeas corpus, Gutierrez contends that he was denied due process because he (1) received faulty admonishments, (2) entered into a plea bargain prior to waiving his right to an attorney, (3) entered into a plea bargain without an interpreter, (4) was appointed an uncertified interpreter, and (5) invalidly waived his right to an attorney. Gutierrez's counsel boiled down his arguments at the hearing on the writ application by saying, "[B]asically I'm trying to get the prior conviction voided, Your Honor, on the basis that he did not have an attorney. . . . My argument is based upon two different legal processes. One being that the waiver of counsel was given unknowingly. And two, . . . I have a due process argument."

Gutierrez argues that he was not properly warned or admonished regarding the "pitfalls, dangers, and disadvantages of self[-]representation." A criminal defendant has a right to the assistance of counsel in state court, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S. Ct. 792, 796 (1963). Concomitant with the right to counsel is the right to waive counsel and to represent one's self. *See Faretta v. California*, 422 U.S. 806,

7

819, 95 S. Ct. 2525, 2533 (1975). When a criminal defendant chooses to waive his right to counsel and represent himself, the waiver should be made "knowingly and intelligently," and he should be warned of the "dangers and disadvantages" accompanying such waiver. *See id.* at 835–36, 95 S. Ct. at 2541. The Texas Court of Criminal Appeals has determined that *Faretta* is triggered when a defendant appears without an attorney to contest his guilt but is not triggered when a defendant appears without an attorney to plead guilty or nolo contendere. *Hatten v. State*, 71 S.W.3d 332, 334 (Tex. Crim. App. 2002).

Here, Gutierrez did not contest his guilt, therefore "the issue is not whether the trial court admonished the accused of the dangers and disadvantages of self-representation [pursuant to *Faretta*], but rather whether there was a knowing, voluntary, and intelligent waiver of counsel." *See Johnson v. State*, 614 S.W.2d 116, 119 (Tex. Crim. App. 1981). Gutierrez acknowledges the decision of the court of criminal appeals limiting the application of *Faretta* in cases such as this. We decline to revisit this issue and hold that *Johnson* and its progeny are applicable to the case before us. *See Hatten*, 71 S.W.3d at 334. Because the requirements of *Faretta* are not invoked by a misdemeanor defendant, like Gutierrez, who waives his right to representation by counsel and does not contest his guilt, any admonishments

8

that the trial court gave concerning self-representation were more than Gutierrez was entitled to receive under the law and could thus not have been "faulty." What remains to be decided, however, is whether the waiver of the right to counsel was knowing, intelligent, and voluntary. *See id.*

If the defendant in a misdemeanor case where guilt is not contested signs a written waiver of counsel in court and there is no contradicting evidence or any evidence that the defendant was coerced or intimidated, then the record is sufficient to support a finding that the defendant's waiver of counsel was valid. *Hatten v. State*, 89 S.W.3d 160, 163 (Tex. App.—Texarkana 2002, no pet.).

Here, Gutierrez hones in on the three motions for continuance in making his argument that he entered into a plea without an interpreter and before waiving his right to counsel. Gutierrez takes issue with the fact that he was first spoken to in English at the arraignment and that he was sent to talk to the county attorney. At the hearing on the writ application, Gutierrez's attorney argued,

> The case was postponed I'm assuming to obtain an interpreter. When there was an interpreter, they continued with that which had already taken place. They had reached a plea agreement. And then they proceed with the plea. And so the defendant is at that time already in the plea, got an agreement worked out with the county attorney.

9

Gutierrez's attorney insinuates that some type of plea bargaining may have taken place during his initial meeting with the prosecutor and argues that he should have been given the interpreter from day one, prior to being sent to talk to the prosecutor.

However, the record does not bear out Gutierrez's attorney's rendition of the proceedings. The first motion for continuance on its face reveals that the proceedings to develop a plea were postponed until a date when an interpreter *would* be available. Moreover, as mentioned above, the record in this case contains an affidavit from the Honorable Don Windle, who was the judge in County Court at Law No. 3 at the time of Gutierrez's plea. Judge Windle stated that he had no independent recollection of this specific case and then explained his usual habit, custom, and practice regarding taking pleas:

> "In my court[,] criminal pleas were conducted on the record, although such practice was not required nor was it regularly done by other misdemeanor courts in Denton County, Texas. I have contacted the court reporter, Dawn Nixon, who served in my court on the date of Mr. Gutierrez'[s] plea in an attempt to obtain the record at issue in this case. Although she no longer works as a court reporter, she advised that she still has some records in her possession. However, after searching her records, Dawn reported that she was not able to locate the record at issue in this case.
>
> "My normal custom and practice during a plea from a pro se defendant was to[] (a) be certain that the defendant was advised of his *Miranda* rights[,] (b) advise him strongly against representing himself[,] (c) notify him that he will be at a material disadvantage in doing so[,] (d) remind him that he is not familiar with the legal

10

system and the prosecutor will be[,] and (e) inform him that he will be held to the same standard as an attorney. I did not utilize a "script" or other checklist but followed an established routine.

"If I was handling a plea from an individual who did not speak English, or speak English well, it was my routine practice to ensure that an interpreter or person who could assist the Defendant by speaking the Defendant's first language was provided, although doing so was not required. Furthermore, when using an interpreter, I would make a special effort in explaining the dangers of pro se representation to the defendant by making as certain as possible that the admonishments were repeated to him or her in the Defendant's language as accurately as I could ascertain.

"Plea bargains in my court moved slower than those in other misdemeanor courts in Denton County, Texas, during that time period because the pleas in my court were on the record and I was very systematic regarding pleas. It was my practice to use the procedures generally associated with a felony plea for misdemeanor pleas."

In addition to Judge Windle's affidavit, the record contains a document entitled "Waivers," in which Gutierrez waived his right to counsel and his right to a trial by jury and applied for probation. This document is signed by both Gutierrez and Judge Windle.

The record also contains admonishments signed by Gutierrez, Jacoby, and Judge Windle and states, "I have read these admonishments prior to entering my plea. I have read and reviewed a copy of the judgment . . . ." The judgment states, "[T]he Court found that [Gutierrez] knowingly, intelligently,

11

and voluntarily waived [his] right to representation by counsel and right to trial by jury, and thereafter, [he] entered a plea . . . ."

The general rule is that a guilty plea is voluntary if the defendant was made fully aware of the direct consequences of his plea. *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999). Pursuant to article 26.13(a) of the Texas Code of Criminal Procedure, before accepting a guilty plea, the trial court must admonish the defendant, orally or in writing, of the range of punishment, the possibility of deportation, and the fact that the defendant will be required to register as a sex offender, if applicable. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp. 2007). When the record reflects that a defendant was properly admonished, it presents a prima facie showing that the guilty plea was knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Jackson v. State*, 139 S.W.3d 7, 14 (Tex. App.—Fort Worth 2004, pet. ref'd). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he did not understand the consequences of his plea. *Martinez*, 981 S.W.2d at 197; *Jackson*, 139 S.W.3d at 14. An appellant's ignorance of a collateral consequence does not render the plea involuntary. *Jimenez*, 987 S.W.2d at 888–89.

Our review of the evidence demonstrates that the admonishments signed by Gutierrez, Jacoby, and Judge Windle informed Gutierrez that the maximum

12

range of punishment was two years' confinement and a $2,000 fine and that the minimum range of punishment was seventy-two hours in jail and a $100 fine; that the court was not obligated to follow the plea bargain agreement; that there was a possibility of deportation; and that he could not appeal without the trial court's permission. The record thus reflects that Gutierrez was properly admonished pursuant to article 26.13 and presents a prima facie showing that his guilty plea was knowing and voluntary. *Martinez*, 981 S.W.2d at 197; *Jackson*, 139 S.W.3d at 14.

Although Gutierrez contends that he only signed the documents because he was told that he would not go to jail and that he thought this would be like Mexico where money can be paid to avoid going to jail, the record reveals that he signed his name on the admonishments that specifically listed jail time and which included the statement, "I understand my sentence and will comply with the Court's order." Moreover, any attempt by Gutierrez to claim that he was not admonished that his 1993 DWI conviction could be used to enhance future DWI convictions to a felony does not render his plea involuntary. *See Jimenez*, 987 S.W.2d at 888–89.

The record contains no evidence that Gutierrez was coerced or intimidated. Although the record reflects that Gutierrez—with the help of an interpreter on March 29, 1992—may have negotiated a plea with the

13

prosecutor, the record also reflects that the trial court's standard procedure would not have allowed it to accept Gutierrez's plea until he (1) had the assistance of a court-provided interpreter and (2) had signed the waivers and admonishments. Additionally, Gutierrez's counsel conceded at the hearing on the writ application that a certified interpreter was not required at the time Gutierrez gave his plea. *See generally* Act of May 21, 1991, 72d Leg., R.S., ch. 700, § 1, 1991 Tex. Gen. Laws 2505, 2505 (amended 2005) (current version at TEX. CODE CRIM. PROC. ANN. art. 38.30 (Vernon Supp. 2007)); *see also* TEX. GOV'T CODE ANN. § 57.002(a) (Vernon Supp. 2007) (requiring that "[a] court shall appoint a certified court interpreter or a licensed court interpreter if a motion for the appointment of an interpreter is filed by a party or requested by a witness in a civil or criminal proceeding in the court"). *But see Ex parte Hernandez*, No. 02-06-00290-CR, 2007 WL 1502028, at \*2 (Tex. App.—Fort Worth May 24, 2007, no pet.) (mem. op.) (not designated for publication) (stating that when record is devoid of any request for interpreter and does not demonstrate that defendant cannot understand the proceedings, defendant waives right to complain of trial court's failure to appoint an interpreter). Thus, we hold that the record is sufficient to support a finding that Gutierrez's waiver of counsel was valid because he waived his right to counsel after meeting with an interpreter who assisted with negotiating his plea. *See id.*

14

Moreover, Gutierrez relies on the combined effect of his allegations to set up his due process argument. However, because we have held that no admonishments on self-representation were required, that Gutierrez was properly admonished under article 26.13, that Gutierrez's waiver of his right to counsel was valid, and that a certified interpreter was not required, Gutierrez's due process argument fails. We therefore hold that Gutierrez's right to due process was not violated during his prior DWI pretrial and plea proceedings.

## V. CONCLUSION

Because we hold that the record is sufficient to support the trial court's denial of habeas corpus relief to Gutierrez on the grounds asserted by Guiterrez in his petition for writ of habeas corpus, we affirm the order denying habeas corpus relief.

SUE WALKER
JUSTICE

PANEL F:   GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: June 5, 2008

15